**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Michael L. JOHNSON, Defendant—
Appellant.**

**No. 02–30017.**

**D.C. No. CR–98–00273–1–BJR.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 10, 2003.*

Decided Feb. 14, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Before BRUNETTI, T.G. NELSON, and RAWLINSON, Circuit Judges.

MEMORANDUM**

Michael Johnson appeals the district court's denial of his motion to suppress.

We hold that Johnson's shed was not so intimately tied to his home as to be protected by the Fourth Amendment. Therefore, we affirm the district court.

Because the parties are aware of the facts, we do not recite them here. Under *United States v. Dunn:*[1]

> [C]urtilage questions should be resolved with particular reference to four factors: [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.[2]

We use these four factors as a tool to consider "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."[3]

Johnson's shed was 40–50 yards from his residence, behind a fenced-in dog kennel, and down an unmanicured slope. The shed's proximity from Johnson's home weighs against a finding that the shed is within his curtilage.[4] Additionally, Johnson had taken affirmative steps toward enclosing over 90% of his house, which did not include the shed. Although one could walk from the house to the shed without crossing through a fence, one must walk

---

Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

2. *Id.* at 300 (citations omitted).

3. *Id.* at 301 n. 4 (focusing on "whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home"). We review de novo whether Johnson's shed was within the curtilage of his home. *United States v. Johnson,* 256 F.3d 895, 909, 916 (9th Cir.2001) (en banc) ("Although our prior precedents regarded the curtilage as a factual question, we conclude, by a different majority, that those cases have been overruled by *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).").

4. *See Dunn,* 480 U.S. at 302 (holding that 50 yards from a fence and 60 yards from the residence was a "substantial distance [that] supports no inference that the barn should be treated as an adjunct of the house").

around the fenced-in dog kennel and down a hill to do so. Furthermore, the only thing preventing the house from being fenced in all the way was where it connected with the driveway. Each of these facts weighs against Johnson's contention that his shed was within his home's curtilage.[5]

Nothing in the record suggests that Johnson used the area between his house and the shed "for intimate activities of the home."[6] Johnson used the shed to grow marijuana—not an everyday domestic use, to be sure. Additionally, nothing around the shed objectively put the officers on notice that the shed was used for domestic life purposes. Finally, Johnson took no steps toward decreasing the shed's visibility.[7] The shed neither sits behind a fence nor is it blocked by a physical structure.

Because each of the four factors in *Dunn* weighs against a finding that the shed falls within the curtilage of Johnson's home, we hold that the shed is not so intimately tied to his home as to be protected by the Fourth Amendment. Therefore, we affirm the district court.

AFFIRMED.

---

5. *See Dunn,* 480 U.S. at 301 n. 4 (stating that "[f]encing configurations are important factors in defining the curtilage").

6. *Id.* at 302.

7. *See id.* at 303 (testing visibility as if a person were standing in an open field near the house).

